UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 15-82590 |
| | ) | |
| **Xhevdet and Fize Rushani,** | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | Judge Lynch |
| | ) | |
| | ) | |

<u>MEMORANDUM DECISION</u>

The Rural Housing Service of the United States Department of Agriculture's Rural Development Division ("USDA") seeks relief from the automatic stay to allow it to pursue foreclosure against Debtors' residence at 309 East Lafayette Street, Somonauk, Illinois. (ECF No. 51.) For the reasons stated below, the motion of USDA will be granted.

<u>Jurisdiction</u>

The United States District Courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code. 28 U.S.C. § 1334(a). The district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges in their districts. 28 U.S.C. § 157(a). Internal Operating Procedure 15(a) of the District Court for the Northern District of Illinois refers its civil proceedings arising under title 11 to the district's bankruptcy judges.

"A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11." *In re Morrow,* 495 B.R. 378, 382 (Bankr. N.D. Ill. 2013) (citing 28 U.S.C. § 157(b)(1)). "A motion for relief from stay arises in a case under title 11 and is specified as a core proceeding." *Id.* (citing authority). Accordingly, this is a core

proceeding over which this Court has authority to hear, determine, and enter final orders or judgments. 28 U.S.C. § 157(b)(2)(G).

Facts and Procedural Background[1]

Debtors Xhevdet and Fize Rushani filed for relief under Chapter 13 on October 15, 2015. They listed in their bankruptcy schedules one jointly-owned real property located at 309 East Lafayette Street, Somonauk, Illinois (the "Somonauk Property"). The Somonauk Property is Debtors' residence. On April 26, 2016, counsel for the Debtors filed a proof of a secured claim on behalf of USDA in the amount of $106,415.[2] USDA later filed a proof of claim which it amended on May 1, 2017, to assert a secured claim of $128,237.69. Neither the Debtors nor the standing trustee has objected to the amended claim.

The court confirmed[3] the Debtors' thrice-amended plan of reorganization on May 4, 2016. (Chapter 13 Plan of Reorganization; USDA Exhibit F; ECF No. 39). The confirmed plan required the Debtors to make direct payments to two lenders holding mortgages on the Somonauk Property. This required the Debtors to pay $592.70 per month to "Centrue [Bank, the senior lender,]"[4] on its first mortgage and $718.59 per month to "USDA Rural Development", the junior lender, on its secondmortgage. The confirmed plan further required the Debtors to make their current monthly mortgage payments directly to USDA. However, the arrearages on both mortgage loans were to be paid through the plan without interest.

USDA seeks relief from the automatic stay to pursue foreclosure proceedings against the Debtors' residence in Somonauk, Illinois under 11 U.S.C. § 362(d).[5] Both

---

[1]   To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such. The Court also takes judicial notice of its docket. *In re Rhoads*, 572 B.R. 905, 908 (Bankr. N.D. Ill. 2017).

[2]   *See* FED. R. BANKR. P. 3004 (a debtor "may file a proof of the claim within 30 days after the expiration of the" of the bar date). The governmental bar date in this case was April 12, 2016.

[3]   Its confirmation order cured the confirmed plan's failure to complete within five years by increasing plan payments from the proposed $500 per month to $605 per month. That cure resolved the standing trustee's sole objection to confirmation.

[4]   Midland States Bank is the successor-in-interest to Centrue Bank.

[5]   USDA's mortgage is apparently junior to a mortgage of Centrue Bank or its successor, but Centrue has not sought stay relief in the case.

parties submitted briefs on the motion, following which the court conducted an evidentiary hearing on the issues raised on February 7, 2019. Prior to the hearing, Debtors and USDA filed stipulations at the direction of the court. (ECF No. 66; "Stipulations".) At the request of the Debtors, the proceedings were translated by a sworn, certified court translator pursuant to FED. R. EVID. 604, 605. Both Debtors joined their attorney at the trial, but only Mr. Rushani testified. In addition to his testimony, the court received in evidence without objection the following:

- The Debtors' promissory note in the original principal amount of $118,000 and mortgage given USDA in the Somonauk Property dated April 9, 2004. Among other things, the note provides for the repayment of subsidies that may be granted the Rushani's in the form of payment assistance;

- The "subsidy repayment agreement" between USDA and Debtors dated April 9, 2004;

- The November 8, 2018, declaration of Deborah Mitchell of USDA that purports to summarize four payment assistance agreements with effective dates ranging from May 5, 2004, to January 9, 2018. The declaration states that no post-confirmation payments were received by USDA from Debtors until January 10, 2018 and attaches a worksheet which purports to summarize the loan repayments and post-petition arrearages;

- The confirmed plan;

- The renewal certification of Debtors' payment subsidy dated October 9, 2017, and related transmittal letter to USDA from Debtors' counsel dated November 8, 2017;

- The December 21, 2017 transmittal letter from USDA to the Debtors and accompanying payment assistance agreement for monthly payment assistance of $343.51 effective January 9, 2018 (the "December Letter");

- The Standing Trustee's report of receipts and disbursements for the period from December 1, 2017, through May 31, 2018, showing receipts and disbursements of $3,635;

- Certified mail receipts alleged to relate to Debtors' payments between May 3, 2018 and September 9, 2018; and

- The Debtors' group exhibit that includes a letter dated February 16, 2016 from USDA to the Rushanis regarding its return of their attempted $720 payment, the returned check and certain handwritten notes that Mr. Rushani testified were his.

Mr. Rushani testified that he and his spouse sought bankruptcy relief to stop a sheriff's foreclosure in state-court proceedings brought by Centrue Bank. He testified about the refusal of his attempted payment in February 2016, and stated that he engaged Mr. Ward, his trial counsel here, when the Rushanis found themselves unable to keep up with their USDA payments. Mr. Rushani further testified that he did not understand the contents of the December Letter except that he believed that it reduced his payments to $351.32 per month as of January 9, 2018.

On cross-examination, Mr. Rushani admitted that the terms of the confirmed plan called for payments of approximately $718 per month. He acknowledged that he made some direct payments to Centrue Bank under the confirmed plan, but that he failed to make the direct payments to the USDA as provided by the confirmed plan to USDA. He further admitted that he did not set aside or provide for funds that could be used to pay USDA upon resolving the question of accepting payment. He also acknowledged the bold-face statement found in the December Letter stated that stated the agreement did not resolve his delinquency. The parties in interest expressly consented to the continuation of the automatic stay until the conclusion of the final hearing and announcement of the court's decision pursuant to 11 U.S.C. § 362(e).

USDA's mortgage interest in the property is not in dispute. Debtors stipulate that they signed a promissory note and mortgage on the property in favor of USDA in 2004 to memorialize a loan they received from USDA. (Stipulation, ¶¶ 1-4.) They further stipulate that their confirmed plan required them to make direct monthly payments to USDA of $718.59. The Debtors do not contest that they did not make any of the required direct payments to USDA from the petition date of October 15, 2015 until January 2018 – missing 26 monthly payments, or nearly half the amount

of payments due USDA under the terms of their confirmed plan.[6] (*E.g.*, Stipulations Ex. "E"). Nor have the Debtors shown they are financially able to cure that default within a reasonable period or during the term of the plan.

In considering the motion, the court has considered the motion, the arguments of the parties presented in their briefs and at trial, the exhibits, stipulations of the parties, and testimony of Mr. Rushani. The court also has taken judicial notice of the contents of the docket in this matter. *See Inskeep v. Grosso* (*In re Fin. Partners*), 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (discussing the authority of a federal court to take judicial notice of its own or other dockets).

Discussion

**Burden of Proof.** "The decision to modify the automatic stay pursuant to § 362(d) is committed to the sound discretion of the bankruptcy court." *In re Pelham Enterprises, Inc.*, 376 B.R. 684, 689 (Bankr. N.D. Ill. 2007) (citing cases). USDA bears the burden of proof as to a lack of equity in the Somonauk Property, 11 U.S.C § 362(g)(1), and Debtors bear the burden of proof on all other matters, 11 U.S.C § 362(g)(2). However, "the party making the request also has the initial burden of producing evidence sufficient to establish a prima facie case of entitlement." *In re SSK Partners LLC*, 11-BK-49091, 2012 WL 4929019, at *4 (Bankr. N.D. Ill. Oct. 12, 2012) (citation omitted). *But see In re Hood*, 449 Fed. Appx. 507, 509 (7th Cir. 2011) ("properly executed and filed proof of claim is *prima facie* evidence that a claim is valid"). USDA must show a "*colorable* claim of a lien on" Debtors' real property. *C.f. Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990) (citation omitted) (emphasis in original). Those showings must be established by a preponderance of the evidence. *See In re Pelham Enterprises, Inc.*, 376 B.R. 684, 690

---

[6]    Although the plan nominally sets forth a term of 36 months, its Section D provides that "if the amount paid by the debtor to the trustee during the initial plan term does not permit payment of general unsecured claims as specified in Paragraphs 8 and 9 of Section E, then the debtor shall make additional monthly payments, during the maximum plan term allowed by law, sufficient to permit the specified payments." (Confirmed Plan (Exhibit F).) Paragraph 8 in the plan's Section E requires payment of 100% of the allowed general unsecured claims, and the confirmation order suggests that based on the amount of allowed claims the plan will complete in 60 months.

(Bankr. N.D. Ill. 2007). If the Court determines that USDA made a *prima facie* showing, then Debtors burden becomes one to "rebut this presumption, not to prove that cause [for relief from the automatic stay] does not exist." *SSK Partners*, 2012 WL 4929019, at *4.

**Analysis**. Section 362(d)(1) provides for relief from the automatic stay on request of a party in interest "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1). Although Section 362(d) "is written in mandatory terms, the bankruptcy court has discretion whether and to what extent it will grant relief from the stay." *In re Williams*, 144 F.3d 544, 546 (7th Cir. 1998) (finding no abuse of discretion to lift stay for state court to determine whether lease had terminated pre-petition or if eviction was warranted). "Cause as used in Section 362(d)(1) has no clear definition and is determined on a case-by-case basis." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (internal quotation omitted) (quoting *In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990)). A "desire to permit an action to proceed to completion in another tribunal may provide another cause" under § 362(d). *Williams*, 144 F.3d at 547 (quoting *Matter of Mendoza*, 111 F.3d 1264, 1271 (5th Cir. 1997)). "In determining whether cause exists, the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *In re C & S Grain Co., Inc.*, 47 F.3d 233, 238 (7th Cir. 1995) (citing *In re Opelika Mfg., Corp.*, 66 B.R. 444, 453 (Bankr. N.D. Ill. 1986)). Generally, stay relief is appropriate "when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." *Fernstrom*, 938 F.2d at 735. Factors to consider are whether:

> a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
> b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
> c) the creditor has a probability of prevailing on the merits.

*Id.* (quoting *In re Pro Football Weekly*, 60 B.R. 824, 826 (N.D. Ill. 1986)).

Courts have found that a debtor's material, unjustified post-confirmation default on the terms of a confirmed Chapter 13 plan may constitute "cause" for stay relief. A leading treatise on Chapter 13 practice and law concludes from reported decision that the failure to make plan payments to the trustee ranks with the defaults on direct mortgage payments as "the most common postconfirmation defaults supporting relief from the stay." KEITH M. LUNDIN & WILLIAM H. BROWN, CHAPTER 13 BANKRUPTCY, 4th Edition, § 244.1, at ¶ [1], Sec. Rev. June 8, 2004, www.Ch13online.com (footnotes omitted). *See also* 11 U.S.C. § 1307(c)(6) (listing as an example of "cause" to dismiss or convert a Chapter 13 case "material default by the debtor with respect to a term of a confirmed plan"). Judge Barnes similarly notes that "courts that have considered postconfirmation relief from stay motions in any detail have, without fail, concluded that after confirmation, a movant's grounds generally are limited to postconfirmation defaults on the debtor's plan." *Morrow,* 495 B.R. at 387 (citing cases).

The Rushanis do not dispute that they have failed to make 26 monthly payments to USDA required by their plan. It hardly needs to be noted that failure to pay almost half of the scheduled payments due to a creditor under a confirmed plan is material. The Debtors have not shown that their failure to make those payments was justified. Mr. Rushani testified that he attempted on about two occasions around mid-February 2016 to send monthly payments which were returned. He did not suggest testimony that he or Ms. Rushani attempted to make other payments. The witness did offer any convincing explanation why they did not do so. But Mr. Rushani admitted that he did not hold the returned remittance for future payments when he and the agency had resolved the problems with tender, and further acknowledged that the Debtors now do not have the funds needed to pay the USDA arrearage.

The Debtors attempted payment 2016, occurring four months after the petition date, was at least three months late. About two month after that payment was returned, the Debtors filed a proof of claim on behalf of USDA. (Claim No. 4.) And the Debtors did not object to the proof of secured claim filed by the USDA on May 19, 2016. (Claim No. 5.) It is noteworthy, too, that the USDA claim indicated where

payments were to be sent. (*Id.*) Not only did Debtors not object to the claim, but they provided for the payments to USDA in their proposed Chapter 13 plan. Their plan was confirmed on May 4, 2016. The Debtors now do not attempt to argue that the return of a check in February 2016 alleviated them of their obligations expressly set out in their plan confirmed less than three months later.

Debtors have not sought to modify the terms of the plan.[7] Nor do they suggest that the will or can cure this default under the plan. Nor do the Debtors dispute USDA's assertion that the total amount of liens on their house exceed its value; indeed, the agency's valuation of the property is consistent with that found in the Debtors' own bankruptcy schedules. Taking all of this into consideration, the court must find that USDA has met its burden of demonstrating that the hardship on USDA outweighs the burden on the debtor or estate for the foreclosure action to proceed.

The Debtors now argue that there is no default because the January 9, 2018 Assistance Agreement" modified or novated their original loan agreement and thereby either waived or terminated any default as of that date. USDA disagrees – contending that the Assistance Agreement at most modified Debtors' required monthly mortgage payment going forward. But this court need not adjudicate the effect of the Assistance Agreement on the original contract and the contract default because it is undisputed that the Debtors have defaulted on the terms of the confirmed plan without justification or request for plan modification. The confirmed

---

[7]    Nor is this necessarily a mere technicality or procedural issue. Section 1329 permits certain modification of confirmed plans, but may not "provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time." 11 U.S.C. § 1329. The Court makes no determination at this time as to whether the plan could now be modified to cure the post-confirmation default, but notes that at least one court has held that 11 U.S.C. § 1329 does not authorize modification of a confirmed plan to cure a post-confirmation default on a mortgage which is subject to the restrictions of Section 1322(b)(2), *In re Long*, 453 B.R. 283, 294 (Bankr. W.D. Mich. 2011), while other courts have disagreed, *see, e.g., In re Hanley*, 575 B.R. 207, 214-15 (Bankr. E.D. N.Y. 2017) (citing cases).

plan requires direct payments of $718.59. And it is uncontested that at least 26 of those payments have not been made.

Nor would an agreement between Debtors and USDA have automatically modified the terms of the plan. The confirmed plan describes the direct payments to USDA as:

> C. The debtor will make current monthly payments, as listed in the debtor's Schedule J-increased or decreased as necessary to reflect changes in variable interest rates, escrow requirements, collection costs, or similar matters-directly to the following creditors holding claims secured by a mortgage on the debtor's real property:[8]
> Creditor: Centrue, monthly payment, $592,70;
> Creditor: USDA Rural Development, monthly payment, $ $718.59.

The Debtors filed Schedule J with their petition on October 15, 2015. It was never amended.  In their Schedule J, the Debtors listed "home ownership expenses for [their] residence [including] first mortgage payments and any rent for the ground or lot" to be $565.00 per month and listed "[a]dditional mortgage payments for [their] residence, such as home equity loans" to be $725.00. (ECF No. 1.) USDA's mortgage apparently has a fixed interest rate and, as a junior mortgage, does not include any

---

[8]    Notably, Debtors' plan was confirmed prior to the enactment of the new national model plan, Official Form 113. *See generally* FED. R. BANKR. P. 3015, 3015.1. In contrast, the new national model plan provides for maintenance of payments on a long-term debt as follows:

> The debtor(s) will maintain the current contractual installment payments on the secured claims listed below, *with any changes required by the applicable contract and noticed in conformity with any applicable rules.* These payments will be disbursed either by the trustee or directly by the debtor(s), as specified below. Any existing arrearage on a listed claim will be paid in full through disbursements by the trustee, with interest, if any, at the rate stated. *Unless otherwise ordered by the court, the amounts listed on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below as to the current installment payment and arrearage.* In the absence of a contrary timely filed proof of claim, the amounts stated below are controlling. *If relief from the automatic stay is ordered as to any item of collateral listed in this paragraph, then, unless otherwise ordered by the court, all payments under this paragraph as to that collateral will cease, and all secured claims based on that collateral will no longer be treated by the plan.* The final column includes only payments disbursed by the trustee rather than by the debtor(s).

Official Form 113 (rev. 12/2017) (emphasis added).

escrow payments.  USDA has not sought an increase in the payment amount for collection costs.  A modification as drastic as Debtors suggest – waiving or deferring more than two years in monthly payments – cannot be a "similar matter" as such term is used for routine changes to monthly payments in Section C of the confirmed plan.  Nor was a notice of payment change filed as would have been required by FED. R. BANKR. P. 3002.1 for a change in payment amount affecting the cure and maintenance of a mortgage in the debtor's principal residence.[9]

Without making any findings on the point, USDA has at least shown a "probability of prevailing on the merits," as the term was used in *Fernstrom*, that the January 2018 agreement did not waive, modify or require forbearance on the post-confirmation default to that point.  Under the circumstances presented here, the state court appears to be in a better position to determine the effects, if any, of the Assistance Agreement—an agreement made post-confirmation without the involvement of this Court.[10]  Because Debtors' monthly mortgage payment is already to be paid directly to USDA and not through the standing trustee, any question regarding the effect, if any, of the Assistance Agreement will not directly impact the trustee or other creditors.  Because the security interest which the parties agree USDA holds in real property involves the Debtors' principal residence, Section 1322(b)(2) precludes modification of the agency's rights through the plan.  And while Section 1322(b)(5) authorizes a plan provision for the cure defaults within reasonable time, Debtors have not sought to modify their plan to cure the post-confirmation default.[11]  Thus, it is both apparent that the effect of the Assistance Agreement on

---

[9]    In contrast, Centrue Bank has issued Rule 3002.1 notices with respect to the first mortgage held by on Debtors' residence.  Midland States Bank filed a notice of assignment of claim No. 1 from Centrue to Midland on February 27, 2018.  On December 11, 2018, Midland filed a notice of mortgage payment change disclosing a new total monthly payment of principal, interest and escrow on the first mortgage of $626.21 commencing January 1, 2019.

[10]   Notably, no party has alleged that the failure to seek this Court's approval invalidates the agreement or sought a determination of its validity.  Indeed, although counsel for Debtors mentioned the lack of approval in closing argument at the evidentiary hearing on the stay relief motion, any contention that the agreement is invalid would be inconsistent with his clients' principal argument that the agreement cured all defaults under the plan.

[11]   Nor is the discharge at issue, since debts cured through Section 1322(b)(5) are excepted from discharge. 11 U.S.C. § 1328(a).

the right to foreclose presents a question of state law and that the Debtors have not shown that a foreclosure proceeding against the property will prejudice the estate, impact the bankruptcy or involve bankruptcy issues.

CONCLUSION

For the foregoing reasons USDA's motion to lift the automatic stay as to the Somonauk Property will be GRANTED.  A separate order will be entered concurrent with this Memorandum Decision giving effect to the determinations reached herein.

DATE: February 15, 2019

ENTER:

Thomas M. Lynch
United States Bankruptcy Judge